**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Martin, | No. CV-24-00281-TUC-EJM |
| Plaintiff, | |
| v. | **ORDER** |
| The Arizona State School for the Deaf and the Blind, a body corporate, aka The Arizona state Schools for the Deaf and the Blind, | |
| Defendant. | |

    Currently pending before the Court is Defendant the Arizona State School for the Deaf and the Blind's Motion to Dismiss (Doc. 13), Plaintiff's [Amended] Motion for Leave to File Third Amended Complaint (Doc.16), and Plaintiff's Motion to Strike or in the Alternative Motion for Leave to File Surreply as to New Argument Raised at P.3 Line 12-Third Amended Complaint P.5, Line 18 of Defendant's Reply in Support of Motion to Dismiss (Doc. 21). In addition to seeking leave to amend his Complaint, Plaintiff has filed a response in opposition to Defendant's motion to dismiss, and Defendant filed a combination reply to the motion to dismiss and response to Plaintiff's motion to amend. Pl.'s Response to Def.'s Mot. to Dismiss (Doc. 14); Def.'s Reply in Support of Mot. to Dismiss (Doc. 19). Additionally, Defendant responded to Plaintiff's motion to strike, and Plaintiff filed replies to his motion to amend and motion to strike. Def.'s Response to Pl.'s Mot. to Strike (Doc. 22); Pl.'s Reply re Mot. for Leave to File 3d Amended Compl. (Doc. 20); Pl.'s Reply Re: Mot. to Strike (Doc. 23).

As such, the motions are fully briefed and ripe for adjudication. In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument. As discussed below, the Court will deny Defendant's motion to dismiss and grant Plaintiff leave to file a third amended complaint.

## I.   FACTUAL BACKGROUND[1]

In July of 2022, Dr. Martin was hired as a contract employee at the Arizona State School for the Deaf and the Blind ("ASDB") as an Assistant Superintendent. SAC (Doc. 1-4) at ¶ 8. Dr. Martin is a black, African-American male. *Id.* at ¶ 11. The contract was a one-year, renewable contract issued pursuant to A.R.S. § 15-1325(A). *Id.* at ¶ 8. Dr. Martin's supervisor was Superintendent Annette Reichman, a white/Caucasian female, and the Chief Executive Officer of ASDB during the relevant time period. *Id.* at ¶¶ 9–10. This dispute originates from a meeting that took place between Ms. Reichman and Dr. Martin on December 19, 2022. *Id.* at ¶ 21. In this meeting, Ms. Reichman told Dr. Martin that she would not be recommending his contract for renewal for another year. SAC at ¶ 21.

Between Dr. Martin's July start date and the December 19th meeting, Ms. Reichman did not provide Dr. Martin with a set of duties or a job description. *Id.* at ¶ 12. Furthermore, Dr. Martin did not receive any negative evaluation or criticism from Ms. Reichman with respect to his performance before December of 2022. *Id.* at ¶¶ 13–16. The Complaint does not note any events between Dr. Martin's start date and the December 19th meeting. *See id.* at ¶¶ 8–21. During the December 19th meeting, Ms. Reichman verbally advised Dr. Martin that she would not be recommending the renewal of his contract. *Id.* at ¶ 21. The only reason she cited was that Dr. Martin "lacked a sense

---

[1] For purposes of this Order only, the Court will take as true the allegations contained in Plaintiff's Second Amended Complaint (Doc. 1-4). *See Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

- 2 -

of urgency." SAC (Doc. 1-4) at ¶ 21. On December 24, 2022, Dr. Martin sent Ms. Reichman an email stating that she had never made any mention of this lack of urgency during any of their hours-long weekly meetings before December 19th. *Id.* at ¶ 23. In January of 2023, during a weekly meeting between Dr. Martin and Ms. Reichman, Ms. Reichman suggested that several of Dr. Martin's employees be removed from his supervision. *Id.* at ¶ 28. Dr. Martin protested this suggestion. *Id.* Ms. Reichman then suggested that Dr. Martin resign from his employment. *Id.* On February 6, 2023, Dr. Martin wrote Ms. Reichman asking her to provide specific issues with his leadership. SAC (Doc. 1-4) at ¶ 24. Ms. Reichman did not follow up. *Id.*

Notably, ASDB's policies require a written evaluation to be transmitted to the contract employee and signed by the employee and evaluator. *Id.* at ¶ 17. These evaluations help determine the adequacy of employee performance and provide the basis of administrative decisions, such as the renewal and non-renewal of contracts. *Id.* at ¶¶ 19–20. Also, according to ASDB's policy, contract employees with inadequate performance shall be given an improvement plan for up to ninety (90) days where employees can overcome inadequacies. *Id.* at ¶ 25. ASDB did not provide any written evaluation to Dr. Martin, nor did it offer him an improvement plan to correct deficiencies in his performance. SAC (Doc. 1-4) at ¶¶ 15, 25.

Dr. Martin believed that the President of the Board wanted to promote him to the Superintendent role and remove Ms. Reichman. *Id.* at ¶ 29. Dr. Martin further believed that this was due to the President's assessment of Ms. Reichman's leadership skills and her poor handling of an incident unrelated to the current case.[2] *Id.*

Before ASDB's Board meeting in March of 2023, Ms. Reichman had the President of the Board removed. *Id.* at ¶ 32. At the March 2, 2023, ASDB Board meeting, Ms.

---

[2] The Complaint does not include details of the President's assessment of Ms. Reichman. As to the unrelated incident, a teacher was accused of making inappropriate and insensitive comments to students. SAC (Doc. 1-4) ¶ 30. When this was brought to Ms. Reichman's attention, she did not believe it was a significant concern and wanted to let the situation blow over. *Id.* at ¶ 31.

Reichman recommended that Dr. Martin's contract should not be renewed because he did not have a "sense of urgency." *Id.* at ¶ 33. Despite having the support of a Board member and several audience members, Dr. Martin was placed on administrative leave on March 6, 2023. SAC (Doc. 1-4) at ¶¶ 34–36. ASDB provided the official notification as required by statute on April 15, 2023. *Id.* at 36.

On June 23, 2023, Dr. Martin presented his concerns of race and gender discrimination to ASDB's Board President and Human Resources. *Id.* at ¶ 37. Dr. Martin, a black, African-American male, holds a doctorate in Educational leadership, a master's degree in Secondary Educational Leadership, and a bachelor's degree in biological sciences. *Id.* at ¶¶ 11, 41–42. Dr. Martin's temporary replacement, Oran Tkatchov, is a white/Caucasian male with a master's degree in Secondary Educational Leadership, but he has not earned a doctorate or an Arizona Superintendent Certificate. *Id.* at ¶¶ 39–40. Dr. Martin's employment ended on June 30, 2023 under the terms of the original contract. SAC (Doc. 1-4) at ¶ 45.

## II.     STANDARD OF REVIEW

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ. P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.").

Rule 12(b)(6) motions are meant to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

"When ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). "The court draws all reasonable inferences in favor of the plaintiff." *Id.* (citing *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)). This Court is not required, however, to accept conclusory statements as a factual basis. *See Twombly*, 550 U.S. at 555; *Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss."). Accordingly, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory[.]" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732).

### III. ANALYSIS

#### A. *Third Amended Complaint*

Rule 15, Federal Rules of Civil Procedure, provides that "[a] party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1). Any subsequent amendments require the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay,

1  bad faith or dilatory motive on the part of the movant, repeated failure to cure
2  deficiencies by amendments previously allowed, undue prejudice to the opposing party
3  by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought
4  should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182
5  (1962); *see also* Fed. R. Civ. P. 15(a)(2).  Whether or not leave to amend should be
6  granted is committed to the sound discretion of the district court.  *Id.*  The Ninth Circuit
7  Court of Appeals has recognized that not all of these factors are weighed equally.
8  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Prejudice
9  to the opposing party is afforded the greatest weight.  *Id.* (citations omitted).  "Absent
10 prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a
11 *presumption* under Rule 15(a) in favor of granting leave to amend.  *Id.* (emphasis in
12 original) (citations omitted).

13 In opposing leave to amend, Defendant urges that the proposed Third Amended
14 Complaint contains a legal conclusion and an additional fact regarding Plaintiff's
15 replacement that Defendant believes is unhelpful; however, Defendant does not argue
16 that it would be prejudiced by amendment.  As this case is in its beginning stages, the
17 Court does not find that Defendant would be prejudiced by Plaintiff's proposed
18 amendment.  Moreover, there is nothing to suggest that Plaintiff was acting in bad faith
19 or delayed seeking leave to amend.  Any futility will be addressed in the following
20 section regarding dismissal.  Given that the *Foman* factors weigh in favor of Plaintiff, the
21 Court will grant Plaintiff leave to file a Third Amended Complaint.

22 ### B. *Motion to Dismiss*

23 Defendant seeks dismissal of Plaintiff's Second Amended Complaint in its
24 entirety.  Def.'s Mot. to Dismiss (Doc. 13).  Because the original and amended
25 complaints are nearly identical, the Court will consider these arguments as to Plaintiff's
26 Third Amended Complaint, rather than deeming Defendant's motion to dismiss moot and
27 requiring it to refile.[3]

---

[3] Plaintiff's amendments did not alter the Court's analysis.

- 6 -

**1.     Disparate Treatment**

Defendant asserts that Plaintiff has failed to state a claim of disparate treatment discrimination under either Title VII of the Civil Rights Act or the Arizona Civil Rights Act ("ACRA"), requiring dismissal claims one (1) through eight (8). Def.'s Mot. to Dismiss (Doc. 13) at 4–7. Plaintiff asserts that Defendant relies upon an incorrect pleading standard, as well as improperly relies on affirmative defenses, in its attempt to demonstrate that Plaintiff has failed to state a claim. The Court agrees with Plaintiff.

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"[4] 42 U.S.C. § 2000e-2(a). "Under Title VII, an individual suffers disparate treatment 'when he or she is singled out and treated less favorably than others similarly situated on account of race.'"[5] *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988) (internal quotations and citations omitted)). "To show a prima facie case of disparate treatment, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Reynaga v.*

---

[4] Title VII of the Civil Rights Act of 1964, Section (a), provides that:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

[5] The Arizona Supreme Court has noted that "[t]he Arizona Civil Rights Act is modeled after and generally identical to the federal statute in the area (Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, *et seq.*)[,]" and concluded that Title VII case law is persuasive in interpreting the ACRA. *Higdon v. Evergreen Intern. Airlines, Inc.*, 873 P.2d 907, 910 n.3 (Ariz. 1983). As such, for purposes of this Order, the Court's analysis under Title VII will apply equally to Plaintiff's ACRA claims.

*Roseburg Forest Prod.*, 847 F.3d 678, 690 (9th Cir. 2017) (quoting *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1110 (9th Cir. 1991)). The Ninth Circuit Court of Appeals has recognized that:

> One way to establish an inference of discrimination is by satisfying the prima facie elements from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.[ ]Ct. 1817, 36 L.Ed.2d 668 (1973): (1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Reynaga*, 847 F.3d at 690–91 (citations omitted). The appellate court has further recognized, however, that "although the *McDonnell Douglas* burden shifting framework[] is a useful 'tool to assist plaintiffs at the summary judgment stage so that they may reach trial,' 'nothing compels the parties to invoke the *McDonnell Douglas* presumption." *McGinest*, 360 F.3d at 1122 (quoting *Costa v. Desert Palace*, 299 F.3d 838, 855 (9th Cir. 2002), *aff'd by* 539 U.S. 90 (2003)). The Court of Appeals indicated that at the summary judgment stage, a Plaintiff "may proceed using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant." *McGinest*, 360 F.3d at 1122 (citations omitted).

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court of the United States considered the proper pleading standard for employment discrimination cases and observed that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002); *see also Austin v. Univ. of Ore.*, 925 F.3d 1133, 1136 (9th Cir. 2019). The Court recognized that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Furthermore, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the

*McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* The Court found it "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* at 511–12. The Court noted that because "the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Id.* at 512. Where a complaint gives a defendant "fair notice of what [plaintiff's] claims are and the grounds upon which they rest[,] it sufficiently states a claim upon which relief could be granted. *Swierkiewicz*, 534 U.S. at 514. Ultimately, the Court held that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits[,] [and] [a] requirement of greater specificity for particular claims is a result that 'must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.'" *Id.* at 515 (quoting *Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)); *see also Jones v. Bock*, 549 U.S. 199, 213 (2007) (citations omitted) ("Specific pleading requirements are mandated by the Federal rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts.").

Following its decision in *Swierkiewicz*, the Supreme Court decided several cases "without benefit of statute" and "applied what appears to be a higher pleading standard under Rule 8(a)." *Starr v. Baca*, 652 F.3d 1202, 1213 (9th Cir. 2011). In *Starr*, the Ninth Circuit Court of Appeals analyzed these later decisions including *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). 652 F.3d at 1213–14. After careful consideration of these cases, as well as the Supreme Court's decisions of *Swierkiewicz* and *Ericson v. Pardus*, 551 U.S. 89 (2007) which unequivocally endorsed the notice pleading requirement of Rule 8(a), the Ninth Circuit court of Appeals found "the following two principles common to all of them[:]"

First to be entitled to the presumption of truth, allegations in a complaint or

> counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr*, 652 F.3d at 1215. The Ninth Circuit found that at the motion to dismiss stage of the litigation, the standard "is not that plaintiff's explanation must be true or even probable[,]" only that "[t]he factual allegations of the complaint . . . 'plausibly suggest an entitlement to relief.'" *Id.* at 1216–17 (quoting *Iqbal*, 129 S. Ct. 1951). Furthermore, "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* at 1216.

Here, Defendant "does not dispute that Martin has pleaded sufficient facts to establish the first three elements of a disparate-treatment discrimination claim in counts one through eight." Def.'s Mot. to Dismiss (Doc. 13) at 5. Defendant asserts, however, that Martin "has not pleaded *any* facts to support the fourth element of a disparate treatment claim." *Id.* The fourth element requires a showing that "similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga*, 847 F.3d at 691 (citations omitted). Plaintiff alleges that his Assistant Superintendent position was filled by a less educated, less experienced, white male. *See* SAC (Doc. 1-4) at ¶¶ 39–43; TAC (Doc. 16-1) at ¶¶ 39–43. Defendant urges that Mr. Tkatchov was not "similarly situated" to Plaintiff requiring dismissal. Def.'s Mot. to Dismiss (Doc. 13) at 6. Defendant misappraises what is required in the pleading of a disparate treatment claim.

"A plaintiff is not required to plead (or pursue) a comparator evidence theory of discrimination." *Littlejohn v. Kaiser Foundation Health Plan of Washington*, No. 3:23-cv-06194-TMC, 2024 WL 4451955, at *5 (W.D. Wash. Oct. 9, 2024). "A plaintiff may show an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal quotations and citations omitted). Defendant noted that "[a]lthough Martin

- 10 -

alleged in the SAC that Tkatchov was 'temporarily offered' the assistant superintendent after him (doc. 1-4 at 7, ¶ 39), it is only in the proposed TAC that Martin pleads that Tkatchov also was a candidate when Reichman chose him to fill that position (doc. 16-1 at 8, ¶ 39)." Def.'s Reply (Doc. 19) at 4 n.2. Defendant expresses confusion about "why Martin believes that having been chosen over a 'white/Caucasian male' strengthens his claims for race, color, and sex discrimination." *Id.* Plaintiff's TAC makes clear that Reichman, a white female, originally wanted to hire Tkatchov, a white man, for the Assistant Superintendent position, but the Board chose Plaintiff and Reichman relented. TAC (Doc. 16-1) at ¶ 39. Reichman's only performance related feedback to Plaintiff was that he lacked "a sense of urgency." *Id.* at ¶ 33. The Court finds that Reichman's vague criticism, refusal to provide additional feedback when asked, and actions to circumvent the Board and hire Tkatchov, create a plausible inference of discrimination. As such Defendant's motion will be denied as to Plaintiff's disparate treatment claims.

## **2.** **Implied Covenant of Good Faith and Fair Dealing**

Defendant seeks dismissal of Count Nine of Plaintiff's SAC/TAC because his "employment contract did not expressly or implicitly require ASDB to give him a written performance evaluation or put him on a performance improvement plan before it could terminate his contract." Def.'s Mot. to Dismiss (Doc. 13) at 8. Defendant attached a copy of Plaintiff's purported employment contract to its motion to dismiss. Defendant urges that by alleging a breach of the implied warranty of good faith and fair dealing, Plaintiff's complaint necessarily incorporates the employment contract. Plaintiff TAC, however, only references that an employment contract existed between the parties. TAC (Doc. 16-1) at ¶ 8.

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismissing

into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (citations omitted); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (a court may consider a document where a plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute its authenticity).

"Arizona law implies a covenant of good faith and fair dealing in every contract." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002) (*en banc*) (citations omitted). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Id.* (citations omitted). The Arizona Supreme Court has observed that "because a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Id.* at 29 (citations omitted). Furthermore, "[i]nstances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Id.* at 30 (alterations in original) (citations omitted).

Because a breach of the implied covenant of good faith and fair dealing does not necessarily rely on the express terms of the contract, the Court declines to consider the document at this stage. Furthermore, Plaintiff has adequately alleged that Defendant's failures to "adhere to Arizona law," as well as its own policies, and its alleged "failure to properly evaluate Plaintiff's performance, failure to document such evaluation, and failure to provide a performance improvement plan to correct any deficiency all breached the covenant of good faith and fair dealing." TAC at ¶¶ 42–44. The Court finds that Plaintiff has pled a facially plausible claim for a breach of the covenant of good faith and fair dealing with sufficient "factual content [to] allow[] the [C]ourt to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citations omitted). Accordingly, the Court will deny Defendant's motion to dismiss regarding this claim.

IV. **CONCLUSION**

Based upon the foregoing, IT IS HEREBY ORDERED that Defendant the Arizona State School for the Deaf and the Blind's Motion to Dismiss (Doc. 13) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's [Amended] Motion for Leave to File Third Amended Complaint (Doc.16) is GRANTED. Plaintiff shall file his Third Amended Complaint (Doc. 16-1) within **seven (7) days of this Order**.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike or in the Alternative Motion for Leave to File Surreply as to New Argument Raised at P.3 Line 12-Third Amended Complaint P.5, Line 18 of Defendant's Reply in Support of Motion to Dismiss (Doc. 21) is DENIED AS MOOT.

Dated this 26th day of March, 2025.

Eric J. Markovich
United States Magistrate Judge

- 13 -